and the parties will hear from us in due course. So the next case on our docket is Bernal v. Sacramento County Sheriff's Department and this case is set for 15 minutes per side and for appellants. Appellants counsel, Matthew Beckett. Your Honors, thank you for permitting oral argument on this case. It is a great honor to be able to be here. I wanted to begin very briefly by pointing out that in Michigan v. Summers, citing the Dunaway case, the U.S. Supreme Court emphasized that exceptions to the unless the exception is to end up swallowing the rule. And that is something that needs to be kept in mind here. Later on in the case of Illinois v. Lidster, the U.S. Supreme Court indicated that a detention of a person who is not a suspect would be legitimate where that it they indicate that of utmost importance in the in the three-factor test of utmost importance is that the on detention was designed in a way that would be minimally frightful and minimally intrusive and that the they emphasized that the detention the contact with the police would be for a matter of seconds passing a flyer through the window and saying, would you cooperate? Can we have a consensual encounter, a consensual discussion? And that is precisely not what happened here after just a few seconds. Officer Chuang approached Celia Bernal and spoke to Celia saying, hey, where's Ryan? Where's your son? Celia responded, he's at his grandmother. He's not here. He's at his I don't want to talk to you anymore. There was a consensual encounter, a request for a consensual encounter, followed by a termination of the consensual encounter. And at that point, yes, your honor. A little trouble with the factual context here. I would it be your position that where the police have information about a pending mass murder and they know that an individual has information about the person where they are or significant information that could stop the mass murder, they have no authority to detain that person briefly to ask them for the information that person can just say, I don't want to talk to you and leave. I mean, that's a difficult rule, a difficult rule to take. So I wanted to get your views on that. Absolutely. The defense in this case has repeatedly pointed the court in the direction of the Ryburn versus Huff case, which is somewhat along the lines of what the court is discussing here. But there are major differences in Ryburn versus Huff. The U.S. Supreme Court took note of the district courts on statements that the same police officers who detained the family and entered the house without a warrant had gone to the school and personally interviewed the students where they had knowledge that the students at the school, the officers involved in that incident, had knowledge that the students at the school were describing the Huff child as a loner and outcast who was being mocked and tormented by his classmates and that that was a massive warning flag. Contrast that with this current case where the officer is doing this. First of all, they're 11 miles away from the school at the Bernal home. And my client had already said that their son was at his grandmother's house. And presumably there were officers at the school, which is where any actual real exigency would be present if anybody were to show up there. If no one's showing up there, then there's not anything going on. And these officers, by the way, your honor, had waited around in that parking lot around the corner from the incident for around 10 minutes with four squad cars. I read your honor's dissenting opinion in the Maxwell decision. And in that case, you were pointing out that the officers were in the process of seeking a warrant. And so therefore the detention was legitimate. And that was very appropriate of your honor in that case, as it was well supported by Summers and MacArthur. However, in the current case, two months after your opinion in the Maxwell case, the U.S. Supreme Court came out with the case of Missouri versus McNeely, where they indicated that in the modern telecommunications era where telephonic warrants can be sought, and they are sought in Sacramento County regularly, on when there are multiple officers on scene and telecommunications present, and the ability to do telephonic warrants in the middle of the day, that they can seek a warrant. But they were sitting with four squad cars and seven officers. They were sitting around for 10 minutes, and nobody bothered to even start the process of a warrant. What's your best case to say that in this particular context, it was clearly established that the officers couldn't briefly detain Celia to ask about where her son was? I'm sorry, I'm not sure that I heard the court correctly. What is your best case to say it's clearly established that the police could not detain Celia in the context of this case? It's on three cases that work very closely together. The very limited and non-frightful request for a consensual encounter is laid out in Lidster, combined with the Davis case on, I believe it is Missouri versus Davis or Michigan v. Davis, I apologize, I can't remember which state it was. And then also the Florida versus Royer. And the Davis case and Royer make clear that you cannot compel a person to answer questions by the police, and that you cannot detain a person for failing to answer questions by the police. Celia was not detained at the time that the officers first approached her. They detained her when she stopped answering her questions and got into her car. And so they're detaining her as a result of not answering the questions, and that is something which is clearly prohibited by Royer, Davis, and Lidster in terms of the level of force that was used towards Celia. And it's so the level of force that was used towards William where the very first things that happened towards William was that while he was issuing verbal challenge, an officer pulled a gun out, pointed it at William's head, and said put down your phone, and then charged at him to handcuff him. That is nothing like the unfrightful detention that was Those three cases clearly establish a rule. Yes, Your Honor. Counselor Judge Gould, if I could interject a question. Yes. So part of my concern in this case is with the strength of the government's interest in making inquiries of your clients. When almost every other night we see on national news, like a story of some shooting at a school or other venue, to me it would seem that police have some information that the son of the Bernhals had threatened a shooting, that the police have a duty to try to the state and the police. They have been investigating to stop a school shooting and how that affects the interests that you are advancing. In a situation where they actually contacted Ryan and detained him, as they did after the encounter at the Bernhal house when everybody went to the grandmother's later on, that is the context of detaining other people for the purpose of trying to compel and using force in doing so for the purpose of trying to compel cooperation. The interest is, especially 11 miles away from the school, somewhat lower. If there was a contact with Ryan near the school, it would be extremely high to be able to detain him. But why does the distance of the Bernhals from the school matter in this context where the police are trying to find out where Ryan is so they can talk with him? And Mrs. Bernhal had, Celia had said she knew where he was but just wasn't going to say. She said that Ryan was at his grandmother's house. When did she say that? I thought initially she said I don't want to talk to you and revealed that he was at the grandmother's house sometime later. Is that incorrect? She said it over the phone. She said he is not, over the phone she used words, he is not here, he is at his grandmother's and then ceased the phone call. When Deputy Chuang first saw Celia as she was walking down the walkway to her car in the driveway, Deputy Chuang asked again and Celia said at that point he is not here at home, he is at his grandmother's and then she proceeded to terminate the encounter. And that actually is written into, I believe it is Deputy Chuang's police report that that happened that way. She did tell him at the scene he is not here, he is at his grandmother's and then she terminated the encounter. Did she give him the address of the grandmother? The officers did not ask the address nor did they ask her where she was going. Had they asked where she was going she would have said that she and her husband were planning on going over to the grandmother's house right then and there which is where they were headed but they didn't ask that and they also didn't ask for the address. She said he is not here, he is at his grandmother's. Something to the effect of I don't want to talk to you anymore and got into the car and was getting ready to leave once her husband would have gotten into the passenger seat. But she was never asked those questions. Instead once she got into the driver's seat, Deputies Chuang and Kennedy initiated physical force on her by grabbing her arm. Deputy Winkle, I believe is his name, reached in from the passenger side and grabbed her other arm and they started treating her like a wishbone. To which she then hollered to her husband to record this. He held his phone up to start recording it. Deputy Bliss then said put your phone down and pulled his gun out and pointed it at William's head. Counsel, did you want to reserve? I would like to reserve the remainder of my time. And then we'll hear next from Ms. Cahill. Good morning and may it please the court. The court in its questioning of opposing counsel here has hit on very important issues here. The gravity of the public concern that was at issue in this scenario was huge. I struggle, as I'm sure the court probably does as well, to think of a pressing issue that law enforcement could encounter. Trying to prevent another mass casualty situation. Degrees for which the seizure advanced the public interest is similarly scale-breaking. I don't think that can reasonably be disputed in this case. The only issue left then under this court's holding in Maxwell, which is one of the few even acknowledged in the opinion itself, that discusses the detention of non-suspect witnesses, is the severity of the intrusion on the individual's liberties. Now, counsel has represented to the court that Celia told law enforcement that Ryan was at his grandmother's home. That's one thing. But as he admitted, there was no address provided. And while they didn't ask, Celia was already in her car or about to be in her car at the time. And in Celia's declaration in opposition to our summary judgment motion, she acknowledged, or at least stated in the declaration, that she didn't even know who she was talking to because she had tunnel vision. What concerns me, I guess, most about this case is detaining a person where you have not even any reasonable suspicion that they committed a crime just because you think they could give information about some other criminal activity. It's obviously a slippery slope that could have very bad consequences. And I didn't see any cases actually upholding that sort of detention to question someone about somebody else's crime. The closest cases that upheld anything like that were the checkpoint cases. Are you analogous to this one? I'm sorry, is what analogous to this one? Are you aware of any cases analogous to this one? No, Your Honor. And I think that ties in with our qualified immunity argument as well. This court in Maxwell did specifically reject any narrow reading of the prior opinion of United States Supreme Court. And I think that that case should be read to prohibit all involuntary detentions of witnesses to a crime. This court in Maxwell specifically rejected that reading of Ward. So I think there are situations, and checkpoints are one, where this court and the Supreme Court have found that witness detentions can be lawful, but they do have to be minimally intrusive. And the court in Brown, which this court adopted in Maxwell and used that balancing test, adopted a three-factor test in order to evaluate those types of detentions. Right, but they didn't apply it to actually uphold that sort of detention. This is the first case that I'm aware of, at least in the Ninth Circuit. I believe you're correct, Your Honor. And most of the cases that involve these detentions relate to after-the-fact investigations. And I think that's a key difference with respect to the Maxwell case, where they did find that the detention was unreasonable. There were several key differences in that case that aren't here. One, this court specifically pointed out in Maxwell that the crime had already been committed. And not only that, but they had a suspect in custody. They knew who did it. They had him in custody. There was no crime of this nature that was trying to be prevented by law enforcement activity. Not only that, but the detention was much more substantial. It was several hours. Here, law enforcement showed up to what they hoped was going to be a very brief encounter in the front yard, or at least at the doorstep of the plaintiff's home, to discuss this issue with them. They were never even able to do that. As soon as law enforcement got close to the property, they see the Bernals coming out of the home and getting in the car. They're trying to explain to them, can you stop? Just don't get in the car. And an important point that I think was almost conceded in Plaintiff's reply brief was that had this been a vehicle stop, that it likely would have been lawful. But for a vehicle stop, there has to be some reasonable suspicion. I mean, that's the problem here. There's no reasonable suspicion that either of the Bernals committed any crime. There's no reasonable suspicion at all. The officers had no idea that or thought that it was purely to get information about some other third-party offense. That's what makes it so difficult. I think there's two points there, Your Honor. One, I would disagree with the characterization that they are able to detain them to force them to answer questions. They certainly are entitled to ask the questions. And the witness and the appellants in this case as well were not required to provide information. So she said, I don't want to talk to you. She got in her car to leave. So at that point, why shouldn't she be allowed to leave? Because at that point, Your Honor, that was at the very, very beginning. And it is our position that there are scenarios in which the detention of third-party witnesses, particularly when it's undisputed that those witnesses have vital information in a situation like this, that they are permitted to detain those witnesses at least for a few minutes. Under appellants' argument, it can only go as far as them saying, no, I don't want to talk to you. Our position is that we get at least a couple minutes to detain, to explain why we're there. In Celia's declaration, she claims that she didn't even know it was law enforcement. I think we at least have the right- It was only for the telephone. Obviously, there were six police cars and uniformed officers got out. So she said she didn't tell them the grandmother's address over the phone because she didn't know who they were. In her declaration, she's specific about the interaction in the driveway where she had tunnel vision and didn't realize that it was law enforcement. She didn't know who she was talking to. If that's true, I think we at least have the right to be able to make sure that they know who we are and who's talking to them and trying to acquire this information and explain to them what we know and what we're trying to do. I don't think that's unreasonable. And I think that that's completely permitted under a detention that's contemplated under the rule outlined in Maxwell. Counsel Judge Gould, if I can interject a question, please. This is, I think, Judge, I could have asked if there was any, Judge, I could ask if there was any precedent saying that police could detain someone in these circumstances. I want to ask the converse of that. Is there any precedent saying that the police cannot detain a material witness briefly when that witness is known to have vital information to possibly prevent a mass murder? No, Your Honor. This case does prevent, I'm sorry, present a very unique set of facts that from my review of the case law in this circuit and even in the district courts is absent. Usually the detentions that we see in either the checkpoint or even in the Maxwell case, those types of cases, they are after the fact. They are after a crime has occurred and during the investigation after the fact. I think that that is a hugely, a huge difference in terms of differentiating this case from the court's finding that the detention of Maxwell is unreasonable. And I know appellant's counsel touched on the Ryburn case, which admittedly is a different set of facts and it dealt more with the advance into the home. But I do think the court there acknowledged the significance of the threats that were at issue in that case, such that the court found it was constitutional for the law enforcement officers to make a entrance into the home. I know that there were some differences in facts that were pointed out with respect to what the police knew about the profile, if you will, of the potential shooter. But those are not, those aren't relevant. I think they were credible information. No one disputes that. Counsel, I have another question for you. Sure. It's my impression that the United States Supreme Court in recent years has more than once said that the question whether conduct is reasonable under the circumstances is like a key question on fourth amendment issues. And if that's correct, if I'm correct in that, if a touchstone of the fourth amendment is reasonableness, how does that affect your arguments here as to whether the detention of a material witness could be reasonable? Your honor, I believe that here it would be reasonable. And I think importantly, as this court has pointed out in prior cases, is that the key issue in terms of a reasonable detention under the constitution in the fourth amendment of a non-suspect witness is that the detention must be minimally intrusive. And I think typically what that should mean or what that would have meant had appellants not simply just tried to run away and get in the car and leave is to have a, to have the ability to say, please stop. Let's have a conversation and ask questions and explain why they're there and see if you can get cooperation. I sort of reject that in Landeros. In Landeros, we sort of rejected that theory. There, the police just wanted him to give his name by himself. I think that was Brown as well. And the court said that it's not reasonable. The police require a person not suspected of a crime to even give his name. Why isn't that helpful in understanding how reasonable it was? Your honor, my understanding in those cases is that there was no investigative nature of the questions it was, or, or crime that was being investigated or potential crime that was trying to be halted. It was more, these guys look suspicious. Let's go talk to them and force them to identify themselves. I think that's drastically different than the case that we have here. And again, I think the, the notion that this court and the Supreme court have outright rejected any type of detention of witnesses, particularly when there's a knowledge that they have information about the investigation, at least for under, under minimally intrusive circumstances. Could I shift the focus for a second to William? The officers advanced the fact or the assertion that William went to reach for something in his bag as a basis for escalating the level of force that was used to that point. Is there not on the record a dispute as to whether he was in fact going for the bag? Your honor there, the appellate assert, there is a dispute of that. Yes. What's the, what's the significance then of determining whether there's a reasonable question of fact in terms of assessing the totality of the circumstances for the force applied? Your honor, our position is that it's not a material dispute that would, that should have defeated summary judgment, that the circumstances surrounding the situation at hand, William's size and demeanor, and the fact that he had a bag, it's undisputed that there was a bag at play, justified a, a slightly higher level of force that was used in order to get William under control. But, but you know, the defense, I thought he was going for the gun. I mean, this is that in miniature, they apparently thought he was asserting that he was going to the bag because they feared a weapon. I'm sorry. Go ahead. Your honor, that, that is their position. But as I said, I, it's our position that it's not material, that that dispute is not material and should not defeat summary judgment because of the other circumstances that were going on at the time. And I believe that. Just to clarify, are you saying that if in fact taking the evidence and the light most favorable to Williams, he was merely holding the phone in his hands, it was okay to point a gun at him and force him to the car and beat him down? Well, I mean, we would dispute the idea that we beat him down, but yes, your honor, I think it was reasonable given his demeanor, which I think is undisputed that he was, he was yelling and was attempting to get in the car and he was understandably somewhat emotional. And I believe it was our position is that yes, it was reasonable to try to get him to a little more under control and, and have tempers cool down a little bit at that precise moment. And I'm over my time. So I have one question for you. So you can go a little over your time. The question is if it was, if we accept it as a fact that William hadn't in any motion toward the bag, such as facilitate going for his gun, but that the bag was unsearched. Is that, is that enough to say that, that for police to act, it's not material whether or not he was trying to open the bag? Yes, your honor. That is our, our, our position that, that the fact that the bag was unsearched and in light of his demeanor and all of the other circumstances that were going on at the time, that it was entirely reasonable to attempt to gain control of William. And it wasn't until after they attempted to just grab one of his arms that he then struck with his elbow, one of the deputies and resisted that, that mild use of force in order to, to detain and get the situation under control. Thank you, Ms. Cahill. Thank you, your honor. Your time is up. So we'll return to Mr. To Mr. Becker. Thank you, judge. I'm going to try to deal with the issues that I was hearing the courts and Ms. Cahill discuss starting with the last couple of things that were mentioned. The issue of an unsearched bag, your honor, do you have pockets right now in the clothing that you have under your robe? Because any encounter with the police is going to involve people having pockets. Those are unsearched bags. Does that mean that the police would be justified in acting this way because somebody is wearing clothing that has pockets? An unsearched bag cannot be dispositive here. Otherwise, the exception will swallow the rule. With regards to William's demeanor, as was raised by your honor on, he was making verbal challenge. He was saying, stop assaulting my wife. Now I shouldn't say saying he was yelling who among us would not say stop assaulting my spouse. That is not a bait while he's holding a camera or his phone up trying to record things. Both the verbal challenge, which is protected by Houston v. Hill, and the attempting to record, which is protected in this circuit by Fordyce versus Seattle, are protected. His demeanor was completely within the limits. On the Ryburn case, I would like to point out that the primary issue why the officers were allowed to go into the house was because they knew that the Hill child had been a loner. And then when they asked about guns, the mother turned and ran into the house, which created a situation where the officers claimed to fear for their safety, which is always going to create exigency. Here, nobody was fleeing into the house. Celia was getting into a car that had windows that the officers could see through. Nobody was doing anything that would lead to, there's a huge distinction there, nobody was doing anything that would create an immediate fear of somebody pulling out a firearm. On the Maxwell case, it was a several-hour detention, but while the officers were seeking a warrant, as Your Honor Icuda had noted in your dissent, the officers were seeking a warrant. That makes it so that the detention is lawful because they were seeking the warrant. Furthermore, in Maxwell, they were treating the people generally during that wait with a lot of respect, rather than playing tug-of-war like a wishbone and pulling a gun out and pointing it at somebody's head. The court was asking about, my note here says that Ms. Cahill was saying this was minimally intrusive and an issue about the nature of this and whether things can be restricted, how intrusive it can be. In the MacArthur case, the court pointed out that the police had narrowly tailored their actions to the exigency that was at hand, and here the police cannot question, force the Bernals to give answers. What are they going to do, waterboard them? They had indicated they didn't want to give any additional answers and that they were headed out somewhere. What they did was not minimally intrusive in support of whatever exigency may have been present. Your Honor, Ms. Icuda, you were talking about the slippery slope. Again, the very first thing that I pointed out when I was speaking here was about the Michigan v. Summers citing the Dunaway. Please do not let the exception swallow the rule. The officers had 10 minutes in that parking lot to try to seek a warrant. They didn't. In the modern telephonic warrant age, as the Supreme Court noted in the McNeely case, it takes a minute or two to type up a sentence and hit the send button, and then a warrant would be pending. They could have said, we're seeking a warrant. Counsel, I'm sorry, but your time is up. Thank you, Your Honor. Could you wrap up your argument? I believe that I've completed my argument. I just want to make sure that this court does not permit the exception to swallow the rule. The rule is that the biggest factor, it appears in the Lidster and Maxwell case, is the minimally intrusive nature of the detention lasting mere seconds with a request for a continued consensual encounter. Thank you. Thanks, counsel. Well, I want to thank both counsel, Mr. Becker and Ms. Kahle, for your excellent advocacy. It's a fascinating case and a difficult one, especially when we see it's unprecedented in our court. Your arguments have helped us and we will take this under advisement and the parties will hear from us in due course. Thank you. Thank you, Your Honors. Okay, the next case.
judges: GOULD, IKUTA, Selna